1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OLIVIA L. SEYMOUR,

              Plaintiff,

    v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,

              Defendant.

C14-1628 TSZ

ORDER

THIS MATTER comes before the Court on appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff Olivia Seymour's application for Supplemental Security Income under Title XVI of the Social Security Act. Having reviewed plaintiff's Opening Brief, docket no. 12, Defendant's Brief, docket no. 13, and the Administrative Record ("AR"), the Court enters the following Order.

ORDER - 1

## BACKGROUND

Plaintiff initiated her application for supplemental security income based on disability in 2011, claiming that she had been disabled since January 2004.  AR 191.  Her claim was denied in September 2011, AR 91–94, and upon reconsideration in November 2011, AR 98–99.  Pursuant to plaintiff's timely request, AR 100, a hearing was held in December 2012 before Administrative Law Judge Rebekah Ross (the "ALJ").  AR 33.  Plaintiff appeared, testified, and was represented by counsel.  *See* AR 35.

In March 2013, the ALJ issued an opinion finding that plaintiff was not eligible for benefits.  AR 17–28.  Applying the five-step sequential evaluation process, the ALJ found that plaintiff did not have an impairment or combination of impairments that equated to the impairments listed in 20 C.F.R. § 404.  AR 21–22.  The ALJ also determined that plaintiff had the residual functional capacity to perform a full range of work, but was limited to unskilled work with simple repetitive tasks where changes only rarely occurred, that require limited judgment or decision-making, and that does not require reading or writing skills.  AR 22–26.

## ISSUES ON APPEAL

The following issues are presented for review:

1.  Whether the ALJ erred in finding that plaintiff's IQ score was not valid, and whether any error in this regard was harmless?

2.  Whether the ALJ erred in concluding that plaintiff's hip pain was not a severe impairment?

3.  Whether the ALJ properly considered the opinions of Dr. Cheryl Lamin and Dr.

ORDER - 2

1   Janice Edwards?

2       4.   Whether the ALJ erred in finding that plaintiff would be off task 5% of the time?

3   **DISCUSSION**

4       **1.  Standard of Review**

5       A court's review of a decision reached through application of the five-step process

6   is limited to assessing whether the Commissioner's denial of benefits is free of legal error

7   and based on factual findings that are supported by substantial evidence.  *Tidwell v.*

8   *Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see also* 42 U.S.C. § 405(g).  "'Substantial

9   evidence' means more than a mere scintilla, but less than a preponderance; it is such

10  relevant evidence as a reasonable person might accept as adequate to support a

11  conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  While the

12  Court must consider "both the evidence that supports and the evidence that detracts from

13  the Commissioner's conclusion," *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998), if

14  the "evidence is susceptible to more than one rational interpretation, one of which

15  supports the ALJ's decision, the ALJ's conclusion must be upheld," *Thomas v. Barnhart*,

16  278 F.3d 947, 954 (9th Cir. 2002).  Finally, a court "may not reverse an ALJ's decision

17  on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir.

18  2012).  An error is harmless when it would not "alter[] the outcome of the case."  *Id.* at

19  1115.  "[T]he burden of showing that an error is harmful normally falls upon the party

20  attacking the agency's determination."  *Id.* at 1111 (quoting *Shinseki v. Sanders,* 556 U.S.

21  396, 409 (2009)).

22

23

**2. Whether the ALJ erred in finding that plaintiff's IQ score was not valid, and whether any error in this regard was harmless?**

As part of step three of the five-step sequential evaluation, the ALJ must consider whether the claimant's impairments are so severe such that she should be considered disabled regardless of other factors affecting her employment opportunities such as age, education, or work experience.  20 C.F.R. §§ 416.920(d); 416.925. The impairments and their elements are listed in an appendix to the federal regulation.  20 C.F.R. § 404, subpt. P, App'x 1.  Listing 12.05 addresses intellectual disability, and requires that a claimant show that he or she had "significantly subaverage general intellectual functioning with deficits in adaptive functioning" which "manifested . . . before age 22." *Id.* at § 12.05.  A claimant is considered to have met the severity aspect of this requirement if any of the following conditions are present.

A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

B. A valid verbal, performance, or full scale IQ of 59 or less;

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; [or]

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

*Id.*  The claimant bears the burden of proving that she has a qualifying impairment.

*Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "For a claimant to show that his

1   [or her] impairment matches a listing, it must meet *all* of the specified medical criteria.

2   An impairment that manifests only some of those criteria, no matter how severe, does not

3   qualify." *Sullivan v. Zebley*, 492 U.S. 521, 530 (1990).

4           The ALJ found that plaintiff did not satisfy the requirements of Listing 12.05.  AR

5   21–22.  Of particular note, the ALJ found that plaintiff's IQ score of 64, which had been

6   rendered during an examination by Dr. Lamin, was not valid because plaintiff had not

7   given "full effort during testing" and there were "several inconsistencies during testing,

8   indicating that the testing was not valid[.]"  AR 21.

9           Plaintiff argues that this conclusion was in error.  Specifically, plaintiff contends

10   that the ALJ is unqualified to make such a determination; that Dr. Lamin's report does

11   not support finding that the IQ score was invalid; and that the IQ score should have been

12   held to be valid because it is consistent with other parts of the medical record.  The Court

13   addresses each of these arguments in turn.

14           *First*, the ALJ is the appropriate person to determine the validity of plaintiff's IQ

15   score.  As the Ninth Circuit has stated, "an ALJ can decide that an IQ score is invalid.

16   That regulation's inclusion of the word 'valid' in Listing 12.05C makes the ALJ's

17   authority clear."  *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008).

18           *Second*, the ALJ did not err in finding that the IQ score recorded by Dr. Lamin

19   was invalid.  Dr. Lamin's report makes the following statements about plaintiff's

20   performance on the IQ test:

21   • "Ms. Seymour only answered two questions correctly in Information.  She missed
       the most basic questions and only offered 'I don't know'."  AR 279.

22

23

ORDER - 5

- "She claimed to have no difficulty understanding cooking instructions, yet she was unable to read simple words on the Vocabulary subtest."  AR 279.

- "Ms. Seymour's responses to questions during the interview were short and many times she simply chose not to answer or did not know."  AR 279.

- "It appeared that as the questions became more difficult, Ms. Seymour became demoralized and gave-up instead of giving incorrect responses, she preferred not to respond at all to save herself from increased embarrassment."  AR 279.

- "She attempted to follow instruction and complete tasks with sincere effort until she gave incorrect responses, showed distress with eyes tearing and then she appeared to simply give-up and not persevere."  AR 279.

- "The Information subtest is the 9th administered, and by this time she appeared to have been less invested in giving accurate responses, as she simply said 'I don't know' to even the simplest questions."  AR 279–80.

Ultimately, Dr. Lamin opined that plaintiff's "fear of being judged may have negatively impacted her performance" and that she "may have achieved a lower performance because of her lack of giving full effort."  AR 280.  Given these statements, it was entirely reasonable for the ALJ to conclude that the IQ score rendered from Dr. Lamin's examination was not valid.

*Third*, while claimant asserts that the IQ score from plaintiff's consultation with Dr. Lamin is consistent with Dr. Edwards's findings, plaintiff ignores that the ALJ's conclusion that the score is invalid is supported by the opinions of Dr. Rita Flanagan and Dr. Cynthia Collingwood.  In regard to her examination of plaintiff's medical records, including Dr. Lamin's report, Dr. Flanagan noted that Dr. Lamin appeared to believe that plaintiff's score was "unusual" and that there were "discrepancies."  AR 73.  Similarly, Dr. Collingwood noted that upon reviewing Dr. Lamin's report, it appeared that the report "raised credibility issues secondary to fluctuating effort during the eval[uation.]"

1   AR 85.  Accordingly, there is ample additional evidence in the medical record to support

2   the ALJ's finding that plaintiff's IQ score was invalid.

3   　　　Plaintiff next argues that the ALJ failed to fulfill her "duty to fully and fairly

4   develop the record and to assure the claimant's interests are considered."  Pl.'s Opening

5   Br. (docket no. 12) at 4 (quoting *Smolen v. Charter*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

6   This duty is heightened when the claimant suffers from a mental impairment.  *Higbee v.*

7   *Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992).  This obligation, however, "is triggered only

8   when there is ambiguous evidence or when the record is inadequate to allow for proper

9   evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

10  The record before the ALJ was neither ambiguous nor inadequate.  Dr. Lamin's

11  statements about plaintiff's lack of effort strongly support the ALJ's finding and there is

12  no indication that there was any evidence left unexamined.

13  　　　Even assuming the ALJ erred in failing to accept plaintiff's IQ score, this would

14  not be reversible error.  Because plaintiff's IQ score was a 64, to satisfy Listing 12.05

15  plaintiff also bore the burden of showing that she satisfied the elements of either

16  subsection C or D of Listing 12.05.  20 C.F.R. § 404, subpt. P, App'x 1, § 12.05.

17  Subsection C requires that a person with a valid IQ score between 60 and 70 also have "a

18  physical or other mental impairment imposing an additional and significant work-related

19  limitation of function[.]"  *Id.*  Subsection D requires that a person with a valid IQ score of

20  between 60 and 70 also have "at least two of the following:  (1) Marked restriction of

21  activities of daily living; or (2) Marked difficulties in maintaining social functioning; or

22  (3) Marked difficulties in maintaining concentration, persistence, or pace; or (4) Repeated

23

1    episodes of decompensation, each of extended duration." *Id.*

2         With regard to subsection C, the ALJ found that plaintiff did not suffer from any

3    other physical or mental impairments.  AR 19–21.  Rather, plaintiff only complained of

4    hip pain that did not prevent her from working.  AR 19–21.  While plaintiff argues that

5    her hip pain was more severe than that ALJ found, the ALJ's conclusion was supported

6    by substantial evidence in the record, including the reports of Dr. Lamin, Norma Nunez

7    Dolmo, Dr. Emily Ashbaugh, Dr. Joseph Shamseldin, and Dr. Olegario Ignacio, Jr.  AR

8    19–21.  These individuals found plaintiff's hip pain to be intermittent, AR 19 (Dr.

9    Lamin), or not sufficiently severe that it prevented her from working, AR 19–21.

10        With regard to subsection D, the ALJ found only "mild restriction in activities of

11   daily living, no difficulties in maintaining social functioning, moderate difficulties in

12   maintaining concentrations, persistence or pace, and no episodes of decompensation[.]"

13   AR 22.  Each of these findings was supported by substantial evidence and a reasonable

14   interpretation of the record.  Accordingly, even if the ALJ had found plaintiff's IQ score

15   to be valid, plaintiff would not have satisfied the requirements of Listing 12.05.  As a

16   result, even if the ALJ had erred in finding that plaintiff's IQ score was invalid, any such

17   error would be harmless because it would not have changed the outcome.  *See Molina*,

18   674 F.3d at 1115.

19        **3.  Whether the ALJ erred in concluding that plaintiff's hip pain was not a
            severe impairment?**

20
        Related to the ALJ's finding that plaintiff did not satisfy Listing 12.05, plaintiff

21
     argues that the ALJ erred in concluding that her hip pain was not a severe impairment.

22

23

ORDER - 8

An impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities."  20 C.F.R. § 416.921(a).  The ALJ concluded that plaintiff's complaints of hip pain were not severe.  AR 19–21.  This conclusion is supported by the findings of numerous medical professionals.  For instance, Dr. Lamin stated that plaintiff reported having failed to seek any recent treatment for her hip, and the last time she was treated for hip related issues was when she was 9 months old.  AR 274. Ms. Nunez Dolmo stated that plaintiff's examination was "unremarkable except for some pain elicited on flexion of the left hip[,]" and that plaintiff "does not have physical disability that is preventing her from working."  AR 297.  Dr. Ashbaugh found that plaintiff had "no asymmetry" or "appreciable leg length discrepancy or muscle atrophy." AR 315.  Dr. Shamseldin, who specifically examined plaintiff's hips, reported that she had normal range of motion and strength, and that plaintiff had no pain upon hip flexion, adduction, and internal rotation.  AR 318.  While plaintiff disagrees with the ALJ's assessment that in light of these findings her hip pain was not severe, this is not enough to challenge the ALJ's conclusion.  The ALJ's conclusion was a rational interpretation of the record and was supported by substantial evidence.  Accordingly, it must be upheld. *See Thomas*, 278 F.3d at 954.

### 4. Whether the ALJ properly considered the opinions of Dr. Cheryl Lamin and Dr. Janice Edwards?

With regard to Dr. Lamin, plaintiff argues that the ALJ mischaracterized Dr. Lamin's opinion regarding plaintiff's ability to maintain persistence and failed to give sufficient reasons for accepting some of Dr. Lamin's findings, but not plaintiff's IQ

1   score.  As addressed above, there was more than sufficient evidence to support the ALJ's

2   finding that plaintiff's IQ score was invalid.

3        Plaintiff's argument that the ALJ misunderstood Dr. Lamin's opinion is also

4   unavailing.  Dr. Lamin stated that "[b]ased on her tendency to give up when the task

5   becomes more difficult, she appears to lack the ability to maintain persistence."  AR 281.

6   The ALJ understood this to mean that plaintiff "has difficulty maintaining persistence on

7   difficulty [sic] tasks."  AR 25.  Plaintiff demurs.  Instead, she appears to argue that Dr.

8   Lamin's statement actually means that plaintiff generally has difficulty maintaining

9   persistence regardless of the difficulty of the task.  Plaintiff's mere disagreement with the

10  ALJ's interpretation of this statement is not sufficient to overturn the ALJ's decision.

11  The ALJ's conclusion is a reasonable interpretation of Dr. Lamin's statement that is

12  consistent with the overall medical record.  Accordingly, the ALJ's finding must be

13  affirmed.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004)

14  ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn

15  from the record, and if evidence exists to support more than one rational interpretation,

16  we must defer to the Commissioner's decision[.]") (internal citations omitted).

17       Plaintiff next argues that the ALJ erred by not giving enough weight to the opinion

18  of examining psychologist Dr. Janice Edwards.  Based on a 2001 examination, Dr.

19  Edwards diagnosed plaintiff with "mild mental retardation" and opined that plaintiff had

20  "serious impairment in occupational and school functioning."  AR 289.  The ALJ gave

21  this opinion "little weight" because the ALJ found that Dr. Edwards had drawn her

22  conclusions without the benefit of "full objective IQ testing" and they were "inconsistent

23

with the overall record."  AR 24.  For instance, the ALJ noted that while Dr. Edwards

opined that plaintiff had poor short term memory, the findings of other medical

professionals contradicted this conclusion.  AR 24.

The ALJ also gave sufficient reasons for concluding that Dr. Lamin's evaluation

of plaintiff—which did not find significant limitations—was more reliable than Dr.

Edwards's.  Specifically, Dr. Edwards extrapolated a great deal—including that plaintiff

had marked limitations in learning new tasks, performing activities without observation,

communicating and interacting with the public, and maintaining appropriate workplace

behavior—from only the observation that plaintiff had slow mental processing speed.

*See* AR 290.  On the other hand, Dr. Lamin considered more in forming her opinion,

including plaintiff's daily activities such as using public transportation and going to the

grocery store without assistance, her ability to have positive verbal interactions with

others, and her ability to "process simple or routine information without making errors."

AR 275, 280.  Accordingly, the ALJ did not err in evaluating the opinions of Dr. Lamin

and Dr. Edwards.

### 5.   Whether the ALJ erred in finding that plaintiff would be off task 5% of the time?

Plaintiff argues that the ALJ's conclusion that plaintiff would only be off task for

5% of her work period is not supported by substantial evidence.  The ALJ's conclusion,

however, is a rational interpretation of the evidence, and is therefore supported by

substantial evidence.  *See Thomas*, 278 F.3d at 954.  Further, while plaintiff argues that

the ALJ should have concluded that she would be off task for greater than 5% of the time,

ORDER - 11

1  she fails to provide any evidence to support this position.

2      Accordingly, the ALJ did not err in concluding that plaintiff would be off task 5%

3  of the time.

4  **<u>CONCLUSION</u>**

5      For the foregoing reasons, the Commissioner's decision is AFFIRMED.

6

7      Dated this 24th day of July, 2015.

8

9  

10  Thomas S. Zilly
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER - 12